UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHARISA L. HIVELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-0024 TLS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On January 21, 2009, Plaintiff Sharisa L. Hively ("Hively"), filed her complaint in this Court  On January 28, 2009, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation.  On June 15, 2009, Hively filed an opening brief, and she asks this Court to enter judgement in her favor or remand this matter to the Commissioner.  On September 29, 2009, Defendant, Social Security Administration ("SSA"), filed a response.  On November 16, 2009, Hively filed her reply brief.  The following report and recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, and the briefs of the parties.

**I.     PROCEDURE**

In September 2005, Hively filed an application for disability insurance benefits ("DIB"). On the same date, Hively also filed an application for supplemental security income ("SSI").  In both applications, Hively alleged disability beginning April 20, 2005.  Hively claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act.  <u>See</u> 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614.  Hively's application was initially denied and again upon reconsideration.

On January 23, 2008, Hively appeared at a hearing before an Administrative Law Judge ("ALJ"). On September 18, 2008, the ALJ found Hively was not disabled because she could perform a significant number of jobs despite the limitations caused by her impairments. In particular, the ALJ found that Hively had not engaged in substantial gainful activity since April 20, 2005. In addition, the ALJ found Hively to have severe impairments of osteoarthritis, degenerative disc disease, obesity, and degenerative joint disease of the knees. However, the ALJ found that Hively did not have any impairments that met the listed impairments in 20 C.F.R. app. 1, subpart P. § 404.

In the instant case, the ALJ found that Hively has a residual functional capacity sufficient to perform a range of sedentary work. Specifically, the ALJ stated that Hively: (1) could lift only 5 pounds, (2) could not climb ladders, ropes, or scaffolds, and (3) could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, and finger.

Based on this finding, the ALJ determined that Hively could not perform her past relevant work as a dispatch supervisor, school bus driver, or semi-driver. However, the ALJ found that Hively could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Hively was not disabled. Accordingly, the ALJ denied Hively's applications for DIB and SSI.

Hively appealed the ALJ's decision to the Appeals Council. On November 21, 2008, the Appeals Council denied review of the ALJ's decision; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on January 21, 2009, Hively filed a compliant in this Court seeking review of the ALJ's decision. This Court may enter a report and recommendation

in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

## II.     ANALYSIS

### A.     Facts

Hively was 36 at the time of the alleged onset of disability and was 39 at the time of the ALJ's decision.  Hively has a general equivalency diploma, and her past relevant work includes work as a dispatch supervisor, school bus driver, semi-truck driver, and transport driver.  Hively alleged that she suffered primarily from physical limitations.  Specifically, Hively alleged that she suffered from lumbar degenerative disc disease, severe bilateral knee osteoarthritis, chronic pain syndrome, obesity, post-lumbar spine laminectomies, and depression.  Hively alleged a disability onset date of April 20, 2005.

Hively testified that she suffered from frequent headaches that would often last an entire day. Further, Hively testified that she had problems with her knees and back that required pain medication.  However, Hively stated that she was not eligible for back or knee surgery due to her weight and general state of health.  Hively reported that she weighed 280 pounds at the time of the hearing.  Moreover, Hively testified that she had developed arthritis in her fingers and likely in her elbows.  Hively stated that she must lay down once or twice a day for thirty minutes to four hours at a time.  Additionally, Hively testified that she went grocery shopping about once a week and generally used a motorized cart to assist her ambulation.  Finally, Hively reported that she could not walk further than one block.

For treatment of her back, neck, and knee pain, Hively primarily saw Dr. Shantanu Kulkarni ("Dr. Kulkarni") from April 2004 to November 2006 and Dr. Roger Thomas ("Dr. Thomas") from December 2006 to January 2008.

1.    Dr. Kulkarni

On April 6, 2004, Hively first consulted with Dr. Kulkarni regarding neck and back pain. Dr. Kulkarni diagnosed Hively with cervical disc protrusion with acquired stenosis, lumbar spine pain, and a history of lumbar laminectomy.  On examination, Hively had a positive straight leg raise.  Dr. Kulkarni prescribed Neurontin and Percocet to manage the pain.  Hively returned to Dr. Kulkarni one week later complaining of continued neck and back pain.  Hively reported that the prescribed medications had a minimal effect on the pain.  Further, upon examination, Hively again had a positive straight leg raise.  Dr. Kulkarni increased the Neurontin dosage and suggested epidural injections for the pain.

On July 14, 2006, Hively again saw Dr. Kulkarni for neck and back pain in addition to abdominal pain and vomiting.  Hively again complained of constant pain in her back and neck reporting a pain magnitude of eight on a scale of ten.  Dr. Kulkarni again prescribed Neurontin and Percocet to control the pain.  Approximately one month later Hively returned to Dr. Kulkarni complaining of side effects from the medications.  Accordingly, Dr. Kulkarni discontinued Neurontin and prescribed Percocet and Zonegran.  A MRI of Hively's lumbar spine showed recurrent disc herniation at L4-5 and disc bulging at L5-S1.  Similarly, a cervical spine MRI showed disc protrusions at C4-5 and C6-7 with moderate acquired stenosis from C4 through C7. Dr. Kulkarni referred Hively to Dr. Nikola Nenadovich for a surgical consultation.

On November 14, 2006, Hively returned to Dr. Kulkarni complaining of severe arthritis of the knees and related pain.  Upon examination Hively again had a positive straight leg test. Dr. Kulkarni again prescribed Percocet and added Norflex.

2.    Dr. Thomas

On December 22, 2006, Hively begin seeing Dr. Thomas on a regular basis. Hively complained of constant neck, back, and knee pain. Upon examination Hively had a positive straight leg test. Dr. Thomas continued Hively on her previously prescribed medications and routinely prescribed Percocet to treat Hively's pain. Further, during Dr. Thomas' treatment Hively repeatedly had positive straight leg tests and continually complained of pain in the neck, back, and knee areas. Dr. Thomas diagnosed Hively with lumbar and cervical degenerative disc disease, bilateral knee osteoarthritis, and chronic pain syndrome.

Additionally, Dr. Thomas issued a physician's statement of ability to do work-related activities that contained the following limitations: (1) could lift five pounds occasionally, (2) could stand or walk less than two hours in an eight hour workday, (3) must periodically alternate sitting and standing to relieve pain, (4) limited pushing and pulling, (5) could never climb, balance, kneel, crouch, crawl, or stoop, (6) could occasionally reach, handle, finger, or feel, (7) symptoms will occasionally be severe enough to interfere with attention and concentration, and (8) would need to take unscheduled breaks during an eight-hour day once or twice per shift for five to ten minutes. On February 16, 2007, Dr. Thomas referred Hively to Dr. Hoffman to evaluate possible disc replacement surgery.

3.     Non-Treating Physicians

a.     Dr. Nenadovich

On August 22, 2006, Dr. Nenadovich performed a surgical consultative exam pursuant to a referral from Dr. Kulkarni. Dr. Nenadovich noted a negative straight leg test and complaints of tenderness and pain. Further, Dr. Nenadovich observed that Hively reported somewhat hysterical symptoms during his examination. Dr. Nenadovich diagnosed Hively with

degenerative disc disease and discogenic back pain. Dr. Nenadovich recommended physical therapy for Hively's back pain but did not recommend surgery as a possible treatment due to Hively's weight.

b.    Dr. Hoffman

On March 28, 2007, Dr. Hoffman performed a consultative exam pursuant to a referral from Dr. Thomas. Dr. Hoffman noted radiculopathy in Hively's right extremity affecting her thumb and index fingers. Additionally, Dr. Hoffman noted that Hively complained of back pain, extremity pain, headaches, and vision problems. Dr. Hoffman observed that Hively suffered from degenerative disc disease and bilateral osteoarthritis of the knee. However, due to Hively's obesity, age, and smoking habit, Dr. Hoffman did not recommend Hively as a candidate for disc replacement surgery.

c.    Dr. Shuyan Wang

On December 23, 2005, pursuant to her application for disability benefits, Hively met with Dr. Shuyan Wang, a state agency consultative examiner. Dr. Wang noted that upon examination Hively weighed 270 pounds and measured sixty-six inches in height. Dr. Wang reported that Hively carried and used a cane during the examination and had difficulties ambulating. Moreover, Dr. Wang observed decreased range of motion in Hively's forward flexion, limited knee flexion, and limited hip flexion. However, Dr. Wang reported that Hively's range of motion in her shoulders, hands, and cervical spine was normal. Dr. Wang diagnosed Hively with chronic back pain, neck pain with herniated cervical spine disc, bilateral osteoarthritis of the knees, and joint pain. Further, Dr. Wang noted that Hively was not a good candidate for work placement.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See  42 U.S.C. §  405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  Further, an ALJ's legal conclusions are reviewed de novo.  Haynes, 416 F.3d at 626.

C. Hively's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Hively must establish that she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §  423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's

residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; <u>Briscoe</u>, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. <u>Briscoe</u>, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. <u>Id</u>.

The major issues this Court must resolve are: (1) whether the ALJ's evaluation of Hively's treating and non-treating physicians is supported by substantial evidence, and (2) whether the ALJ properly assessed Hively's credibility.

1. <u>The ALJ's evaluation of Hively's treating physician is not supported by substantial evidence</u>.

First, Hively argues that the ALJ failed to give Dr. Thomas' opinion controlling weight. Further, Hively asserts that the ALJ erroneously rejected Hively's physical limitations as outlined by Dr. Thomas. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and

consistent with other substantial evidence in the record. Hofslien v. Barnhart, 429 F.3d 375, 376 (7th Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Id. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence that the ALJ must consider. Hofslien, 429 F.3d at 377. Regardless, an ALJ's decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p. An ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability, and failure to do so constitutes error. Clifford, 227 F.3d at 870.

In the instant case, the ALJ made several errors in weighing the opinion of Hively's treating physician, Dr. Thomas. First, the ALJ did not acknowledge Dr. Thomas's status as Hively's treating physician. As such, the ALJ also did not discuss or give any explanation whatsoever for the weight given to Dr. Thomas' opinion, and, therefore, failed to meet the minimum threshold. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion"); Clifford, 227 F.3d at 870. Instead, the ALJ rejected Dr. Thomas' finding that Hively was completely precluded from performing any postural maneuvers. However, even if the ALJ reasonably believed that Dr. Thomas' residual functional capacity determination was

inconsistent with other substantial evidence, this Court cannot tell if such a conclusion is reasonable because the ALJ failed to address the weight given to Dr. Thomas' opinion.  The ALJ had a duty to address the weight given to Hively's treating physician and to articulate reasons for not affording them controlling weight.  <u>Cichon v. Barnhart,</u> 222 F.Supp.2d 1019, 1030 (N.D. Ill. 2002).  In the instant case, the ALJ failed to do so.

Similarly, the ALJ  failed to articulate the weight given to medical evidence from other sources, such as examining non-treating physicians.  For example, while the ALJ relied upon the conclusions of state agency consultative examiner Dr. Shuyan Wang to support the RFC finding, the ALJ failed to explain the weight given to Dr. Wang's opinion.  Without any discussion regarding the weight given to evidence provided by Dr. Wang and other examining physicians, this Court cannot determine whether such reliance is reasonable.  This Court is not in a position to draw factual conclusions on behalf of the ALJ.  <u>Prince v. Sullivan</u>, 933 F.2d 598, 603 (7th Cir. 1991).  Therefore, the ALJ's opinion lacks an adequate discussion of the weight afforded  to the opinions of non-treating physicians.

Finally, while the ALJ made a vague reference to the fact that Hively did not consistently have a positive straight leg test, the ALJ did not explain why these findings were necessarily inconsistent with Dr. Thomas' findings to the contrary. For instance, this Court notes that treating physicians Dr. Kulkarni and Dr. Thomas consistently reported positive straight leg test results. However, the ALJ rejected the physical limitations contained in Dr. Thomas' opinion on the basis that the straight leg test results were not consistently present  Without any discussion as to how Dr. Thomas' findings are inconsistent with the medical evidence, or how lack of uniform straight leg test results render Dr. Thomas' opinion inconsistent, this Court cannot discern

whether such a decision is reasonable or not. This Court is not in a position to draw factual conclusions on behalf of the ALJ and does not imply that the ALJ's decision is incorrect. Prince v. Sullivan, 933 F.2d 598, 603 (7th Cir. 1991). However, the ALJ's opinion lacks an adequate discussion of the issues and fails to create the requisite bridge from the evidence to her conclusions. Further, an ALJ may not select and discuss only that evidence that favors his ultimate conclusion. Similarly, an ALJ may not pick and choose which evidence to follow. Clifford, 227 F.3d at 871. Instead, the ALJ has a duty to consider all relevant evidence in weighing whether Hively is disabled. Id. In the instant case, the ALJ failed to consider all relevant medical evidence and cited primarily to evidence that supported the ALJ's findings. At a minimum, the ALJ must explain how Dr. Thomas' findings of physical limitations are inconsistent with the medical evidence. Additionally, the ALJ must explain how a lack of uniform straight leg test results renders Dr. Thomas' findings inconsistent with the medical evidence. Further, the ALJ must weigh all relevant medical evidence, not just evidence favorable to her decision, in considering what weight to afford a treating physician's opinion and findings.

In conclusion, the ALJ's evaluation of Hively's treating and examining physicians is not supported by substantial evidence since the ALJ failed to articulate the weight given to the physicians' opinions. Further, the ALJ's evaluation of the medical evidence is not supported by substantial evidence because the ALJ did not sufficiently explain the consideration given to relevant medical evidence of other physicians' conclusions from the straight leg tests. Accordingly, on remand, the ALJ must reevaluate what weight to give Dr. Thomas' findings. If controlling weight is not given to Hively's treating physician, Dr. Thomas, the ALJ must explain

the weight afforded this opinion and articulate the reasons why controlling weight was not given to Dr. Thomas' opinion. Similarly, on remand, the ALJ must evaluate what weight to give to the findings of the examining physicians. Finally, on remand, the ALJ must explain how the lack of uniform straight leg test results is inconsistent with Dr. Thomas' findings.

2. The ALJ's determination of Hively's credibility is not supported by substantial evidence.

Further, Hively argues that the ALJ's credibility determination is not supported by substantial evidence. Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003): Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). See also Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported. . . can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," he must articulate some legitimate reason for his decision. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994); S.S.R. 96-7p. Most importantly, he must build an accurate and logical bridge from the evidence to his conclusion. Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000). Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 966-7p.

Regarding Hively's credibility, the ALJ found:

> [t]he overall evidence of record does not support the claimant's testimony as to the severity of pain and level of limitation alleged, and her allegations were noted by an examining orthopedic surgeon to be out of proportion to the examination findings.

<u>See</u> Tr. 19

This Court concludes the ALJ's finding that Hively's claims of severe pain and accompanying limitations were not fully credible is not supported by substantial evidence because the ALJ did not rely upon, nor consider, all of the objective medical evidence in the record. <u>See</u> <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). Specifically, the ALJ focused primarily on the evidence supporting his negative credibility decision. The ALJ made no attempt to address or discuss other objective medical evidence in the record that favors Hively's claims of severe pain and related limitations. <u>See</u> <u>Zurawski</u>, 245 F.3d at 888 (An ALJ must evaluate "both the evidence favoring the claimant as well as the evidence favoring the claim's rejection" and may not ignore an entire line of evidence that is contrary to his findings); <u>see</u> <u>also</u> <u>Diaz v. Chater</u> 55 F.3d 300, 307-08 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion"). In the instant case, the only objective evidence referred to by the ALJ to support his credibility determination regarding Hively's pain was Dr. Nenadovich's report. Dr. Nenadovich's report is unique as the only medical evidence that suggests that Hively's complaints of pain were exaggerated. Further, Dr. Nenadovich was a non-treating physician who met with Hively on only one occasion.

In contrast, the record is full of instances where Hively sought treatment for severe pain in her back, neck, and knees. Hively received pain medication and treatment from Dr. Kulkarni on a continuous basis between 2004 and 2006. Epidural injections were initially prescribed after

prescription medicine failed to manage Hively's chronic pain. Hively has regularly been prescribed various pain medications and other treatments by Dr. Thomas since 2006. In addition, Hively repeatedly complained of severe, chronic, and worsening pain on numerous occasions. Non-treating physician Dr. Hoffman noted that Hively had been treated for neck, back, and knee pain since 2003 and that she reported suffering chronic back pain since the age of eighteen.

While the ALJ is not required to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind his decision to deny benefits. See Zurawski v. Halter, 245 F.3d 881, 889 (7th Cir. 2001). Given that Dr. Nenadovich's report is the only evidence on record to suggest Hively's pain and symptoms were exaggerated, without evidence that the ALJ also considered the treatment notes and records of the other physicians, this Court may only assume that the ALJ improperly selected the medical evidence that supports her credibility decision. The ALJ's failure to address an entire line of evidence that is favorable to Hively's claim warrants a remand. See Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

In conclusion, the ALJ failed to consider an entire line of evidence favorable to Hively in evaluating her credibility; and, accordingly, this Court lacks a sufficient basis upon which to uphold the ALJ's credibility decision. See Zurawski, 245 F.3d at 888. This Court does not suggest that the ALJ's credibility determination was incorrect, but only that greater elaboration is necessary to ensure a full and fair review of the evidence. Id. On remand, the ALJ must conduct a reevaluation of Hively's complaints of pain and related limitations, with due regard to the full range of medical evidence and with sufficient articulation to show how the evidence was

considered.

### III.     CONCLUSION

The ALJ failed to articulate the weight given to Hively's treating physician, failed to articulate the weight given to Hively's examining physicians, and improperly evaluated Hively's credibility. Therefore, this Court **RECOMMENDS** that Hively's motion be **GRANTED**. [Doc. No. 1]. This Court **RECOMMENDS** the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further proceedings consistent with this opinion.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED**

Dated this 27th Day of January 2009.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge